# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-IA-01673-SCT

*LISA BYRD, AURORA CARES, LLC d/b/a TARA CARES, MANHATTAN NURSING & REHABILITATION CENTER, LLC, BEVERLY ENTERPRISES, INC, BEVERLY HEALTH & REHABILITATION SERVICES, INC. f/k/a BEVERLY CALIFORNIA CORP., BEVERLY ENTERPRISES-MISSISSIPPI, INC., MANHATTAN HEALTH CARE CENTER d/b/a BEVERLY HEALTHCARE-MANHATTAN d/b/a BEVERLY HEALTHCARE-EASON BOULEVARD d/b/a BEVERLY HEALTHCARE TUPELO AND BOBBIE BLACKARD*

*v.*

*IRA W. SIMMONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2007 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | HARDIN CHASE PITTMAN |
| | REBECCA ADELMAN |
| | HEBER S. SIMMONS |
| | WILLIAM MELVIN ROSAMOND |
| | WILLIAM EUGENE GRUBBS |
| ATTORNEY FOR APPELLEE: | JOHN GORDON SIMS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2007-CA-01775-SCT

*MANHATTAN NURSING & REHABILITATION*
*CENTER, LLC, AURORA CARES, LLC d/b/a TARA*
*CARES, BOBBIE BLACKARD AND LISA BYRD*

*v.*

*IRA W. SIMMONS*

DATE OF JUDGMENT:           07/18/2007
TRIAL JUDGE:                 HON. BOBBY BURT DELAUGHTER
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    HARDIN CHASE PITTMAN
                                REBECCA ADELMAN
                                HEBER S. SIMMONS
                                WILLIAM MELVIN ROSAMOND
ATTORNEY FOR APPELLEE:      JOHN GORDON SIMS, III
NATURE OF THE CASE:         CIVIL - CONTRACT
DISPOSITION:                 AFFIRMED AND REMANDED - 03/19/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

     **EN BANC.**

     **GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The underlying dispute in this case concerns the care and treatment of a patient at Manhattan Nursing & Rehabilitation Center (Manhattan Nursing) in Hinds County. Following the patient's death, her son sued multiple defendants in Hinds County Circuit Court, alleging negligence, gross negligence, and breach of contract. Several defendants moved to compel arbitration pursuant to an arbitration agreement signed by the plaintiff. The circuit court denied the motions to compel arbitration. Thereafter, these defendants appealed to this Court.

**FACTS**

2

¶2.     On September 23, 2003, Elsie Fidelia Simmons (Mrs. Simmons) was admitted to Manhattan Nursing, which was then known as Beverly Healthcare-Manhattan. When Mrs. Simmons was admitted, her son, Ira Simmons, signed the admission agreement as his mother's "designated representative." A representative from Manhattan Nursing also signed the admission agreement. Mrs. Simmons did not sign the admission agreement. The admission agreement was followed by five appendices and four exhibits. Exhibit B was an arbitration agreement. Again, the arbitration agreement was signed by Simmons, as his mother's "designated representative," but not by Mrs. Simmons. The signature line on the arbitration agreement for an "Authorized Representative" of the facility is blank. Mrs. Simmons died on August 22, 2004, while still a resident at Manhattan Nursing.

¶3.     On May 18, 2005, Simmons filed a complaint against Aurora Cares, LLC, Manhattan Nursing, Beverly Enterprises, Inc., Beverly Health and Rehabilitation Services, Inc., Beverly Enterprises Mississippi, Inc., Aegis Therapies, Inc., Bobbie Blackard, and twenty John Does. Simmons alleged negligence, gross negligence, and breach of contract based on personal injuries allegedly suffered by Mrs. Simmons and based on her alleged wrongful death. Simmons sought compensatory and punitive damages. An amended complaint included additional defendants – Lawrence Tamburino, William Krooss, Lee Roy Byrd, and Lisa Byrd – and set forth additional theories of negligence. The only defendants involved in this consolidated appeal are Manhattan Nursing, Aurora Cares, Bobbie Blackard, and Lisa Byrd. Manhattan Nursing is a nursing home in Jackson, Mississippi. Aurora Cares is a for-profit corporation based in New York. It is not clear from the record how exactly Aurora Cares is involved in this case, but it is clear that Aurora Cares is not a party to the admission and

3

arbitration agreements. Blackard is the administrator of Beverly Health-Manhattan, which is now Manhattan Nursing. Byrd is a nurse practitioner who treated Mrs. Simmons.

¶4. After the initiation of the lawsuit, Manhattan Nursing and Aurora Cares filed a motion to compel arbitration, arguing that Simmons had signed an arbitration agreement upon Mrs. Simmons' admission to Manhattan Nursing and that this agreement required that Simmons' claims be resolved through arbitration. Manhattan Nursing and Aurora Cares also maintained that Simmons should be equitably estopped from challenging the arbitration agreement because he had already alleged that Manhattan Nursing breached the admission agreement. Manhattan Nursing and Aurora Cares further asserted that Aurora Cares, although a nonsignatory to the admission and arbitration agreements, had an equitable right to compel arbitration. Blackard joined the motion to compel arbitration filed by Manhattan Nursing and Aurora Cares.

¶5. In response, Simmons argued that, because an authorized representative of Manhattan Nursing never signed the arbitration agreement, mutual assent between Simmons and Manhattan Nursing was lacking and no valid arbitration agreement existed. Simmons also argued that, because he revoked his offer to arbitrate before a representative from Manhattan Nursing could sign the arbitration agreement, his offer was never accepted and no agreement was formed. Simmons argued in the alternative that he had no authority from Mrs. Simmons' General Power of Attorney to bind her to the arbitration agreement. He did not challenge the right of Aurora Cares to seek arbitration.

¶6. The trial court issued a memorandum opinion and order on July 2, 2007 and stated that the defendants had not demonstrated that Simmons had the authority to bind Mrs.

4

Simmons to arbitration. The trial court stated that there was no showing of Simmons' express, implied, apparent, or statutory authority to sign the arbitration agreement on behalf of his mother. The trial court noted that the General Power of Attorney executed by Mrs. Simmons gave Simmons the authority to make decisions regarding her business and personal affairs, but that this did not grant him the authority to enter the arbitration agreement on her behalf. The trial court also found that, while Simmons could have made certain decisions as his mother's health-care surrogate, he was not authorized to enter an arbitration agreement on her behalf. Finally, the trial court found that Simmons was not estopped from contesting the arbitration agreement while suing for breach of contract. The trial court reasoned that responsible parties could enter into nursing home agreements, but not arbitration agreements, so "the nursing home agreement is fully enforceable, except for the arbitration provision." Manhattan Nursing, Aurora Cares, and Blackard timely filed a notice of appeal on July 27, 2007.

¶7.    As for Lisa Byrd, she filed a motion to dismiss or for summary judgment as well as a subsequent motion to compel arbitration. In her motion to compel, Byrd stated that federal policy favored arbitration and argued that the arbitration agreement entered into by Simmons and Manhattan Nursing gave Byrd the right to compel arbitration despite being a nonsignatory. Byrd further argued that the doctrine of equitable estoppel allowed her to compel arbitration because the allegations against her were based on the admission agreement and were "substantially interdependent" with the allegations against Manhattan Nursing and Aurora Cares. Byrd also claimed that she was an agent of Manhattan Nursing, and could, therefore, invoke the arbitration agreement.

¶8.   Simmons filed a response to Byrd's motion to compel arbitration and argued again that mutual assent was lacking because an authorized representative from Manhattan Nursing failed to sign the arbitration agreement.  Simmons also asserted that the allegations against Byrd were not based on the admission agreement and that Byrd was not an agent of Manhattan Nursing.  Lastly, Simmons pointed out that Byrd had fully litigated the dispute and had participated in discovery for one year before moving to compel arbitration.

¶9.   The trial court issued a memorandum opinion and order denying Byrd's motion to compel arbitration on the same grounds it relied upon to deny the motion to compel by Manhattan Nursing and Aurora Cares.  Byrd timely filed a petition for interlocutory appeal. The petition was passed for consideration and consolidated with the appeal of Manhattan Nursing, Aurora Cares, and Blackard, and, for reasons set out in this opinion, we now summarily grant interlocutory appeal and affirm and remand the petition.

## ANALYSIS

### Standard of Review

¶10.   "The grant or denial of a motion to compel arbitration is reviewed de novo."  *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36 (Miss. 2007) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)); *Pre-Paid Legal Servs., Inc. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004) (citations omitted).

### I.   Whether a Valid Arbitration Agreement Exists.

¶11.   This Court has previously held that agreements between patients and nursing homes affect interstate commerce and, therefore, fall under the purview of the Federal Arbitration Act, 9 U.S.C.S. §§ 1-307. *See, e.g.*, *Grenada Living Ctr.*, 961 So. 2d at 36 (citation omitted).

6

The Federal Arbitration Act requires that this Court first determine whether or not the parties intended to arbitrate the dispute in order to decide whether an arbitration agreement should be enforced. *See, e.g.*, *Grenada Living Ctr.*, 961 So. 2d at 36. In order to conclude that there was an agreement to arbitrate, there must be a valid contract. *Grenada Living Ctr.*, 961 So. 2d at 36-37. "A valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id.* at 37 (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)). The Supreme Court and this Court have held that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Pre-Paid Legal Servs., Inc.*, 873 So. 2d at 83 (citations omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 655 (1986)).

¶12. Manhattan Nursing, Aurora Cares, and Blackard maintain on appeal that Simmons had authority to bind Mrs. Simmons to the arbitration contract either pursuant to the General Power of Attorney or under the Uniform Health Care Surrogate Statute. Miss. Code Ann. § 41-41-211 (Rev. 2005). Alternatively, they argue that Simmons should be estopped from challenging the validity of the arbitration agreement because he seeks enforcement of the admission agreement and because Mrs. Simmons was a third-party beneficiary of the admission agreement. Manhattan Nursing, Aurora Cares, and Blackard also note that Byrd was not their agent, and is, therefore, not entitled to compel arbitration on that basis.

7

¶13. Simmons reiterates on appeal that there is no valid arbitration agreement because a representative from Manhattan Nursing never signed the arbitration agreement and, hence, never accepted Simmons' offer to arbitrate. He adds that his offer to enter the arbitration agreement was revoked before Manhattan Nursing accepted the offer. Simmons maintains that, for these reasons, the arbitration agreement lacked the mutual assent required to form a valid contract. He also claims that he is not estopped from challenging the validity of the arbitration agreement because the admission agreement includes a severability clause. He further maintains that he is not estopped from challenging the arbitration agreement because Mrs. Simmons did not benefit as a third-party beneficiary to the admission agreement since she was allegedly mistreated at Manhattan Nursing. Lastly, Simmons summarily states that he agrees with Manhattan Nursing, Aurora Cares, and Blackard that Byrd is not entitled to compel arbitration.

¶14. Manhattan Nursing, Aurora Cares, and Blackard argue in their rebuttal brief that the arbitration agreement is valid because, although there is no signature from a Manhattan Nursing representative, Manhattan Nursing offered the contract to Simmons, and Simmons' acceptance (as evidenced by his signature) demonstrates mutual assent. They also counter that the arbitration agreement cannot be severed from the admission agreement until there is a "final judicial finding" that the arbitration agreement is unenforceable.

¶15. We find Simmons' argument that the arbitration agreement lacked mutual assent to be persuasive. An authorized representative from Manhattan Nursing failed to sign the arbitration agreement, and Simmons' counsel sent a letter to Manhattan Nursing, making it clear that any offer to arbitrate had been revoked. Furthermore, before Manhattan Nursing

8

had taken any action whatsoever that was consistent with arbitration, Simmons filed suit in the circuit court – an act completely inconsistent with an agreement to arbitrate.

¶16.     The Federal Arbitration Act states in part that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.S. § 2.  Thus, this Court must apply the same analysis for mutual assent to arbitration agreements as it would apply to any other type of contract.

¶17.     Addressing the issue of mutual assent, this Court has stated:

> Ordinarily one of the acts forming part of the execution of a written contract is the signing of it, and the mere fact that a written instrument purports to be an agreement does not constitute it a binding contract where it is not signed. However, signature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intention of the parties. *The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by the acts or conduct of the parties*. . . . The question as to whether those who have signed are bound is generally to be determined by the intention and *understanding of the parties at the time of the execution of the instrument.*  The reason for holding the instrument void is that it was intended that all the parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that until executed by all it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed.

*Turney v. Marion County Bd. of Educ.*, 481 So. 2d 770, 774 (Miss. 1985) (quoting 17 C.J.S. Contracts § 62 (1963)) (emphasis added).  Furthermore, "[a] court cannot 'draft a contract between two parties where they have not manifested a mutual assent to be bound.'" *Ivison*

9

*v. Ivison*, 762 So. 2d 329, 336 (Miss. 2000) (quoting *A. Copeland Enters. v. Pickett & Meador, Inc.*, 422 So. 2d 752, 754 (Miss. 1982).

¶18. The arbitration agreement in this case required the signature of both parties. Although Manhattan Nursing does not dispute the fact that one of its authorized representatives never signed the arbitration agreement, it maintains that the parties' conduct evidences mutual assent. In addressing this argument, it is important to recognize that Manhattan Nursing did not require Mrs. Simmons to agree to arbitrate in order to be admitted to its facility. Moreover, the admission agreement and arbitration agreement are separate agreements that each stand alone. While a Manhattan Nursing representative signed the admission agreement, an authorized Manhattan Nursing representative never signed the arbitration agreement. And while Manhattan Nursing's conduct (as evidenced by the representative's signature on the admission agreement and its admission of Mrs. Simmons as a resident of its facility) indicates its assent to the admission agreement, it does not demonstrate that it assented to the arbitration agreement. The record contains no evidence that Manhattan Nursing accepted the arbitration agreement prior to Simmons' initiation of this lawsuit. The first action taken by either party relating to the arbitration agreement after Simmons had signed it was his outright rejection of the agreement by filing suit instead of filing a claim for arbitration.

¶19. This Court finds that Simmons' signature on the arbitration agreement (which lacked a signature by an authorized Manhattan Nursing representative) was an offer that was never accepted by Manhattan Nursing. Therefore, the arbitration agreement lacked mutual assent and is not a valid contract. *See Grenada Living Ctr.*, 961 So. 2d at 37.

¶20.     We now turn to the other arguments raised on appeal. Manhattan Nursing argues that Simmons is estopped from challenging the arbitration agreement because he also seeks to enforce the admission agreement through his breach-of-contract claims. As stated above, this Court finds that the admission agreement and arbitration agreement are separate agreements that each stand alone. Furthermore, a Manhattan Nursing representative signed the admission agreement, and Manhattan Nursing's conduct demonstrates that it accepted the terms of the admission agreement. Therefore, it is not inconsistent for Simmons to argue that the arbitration agreement is invalid while simultaneously seeking to enforce the terms of the separate admission agreement. Hence, this Court finds Manhattan Nursing's estoppel argument to be without merit.

¶21.     Since we conclude that no valid arbitration agreement exists, we do not address Manhattan Nursing's argument that Simmons had authority to bind Mrs. Simmons to the arbitration contract pursuant to the General Power of Attorney or under the Uniform Health Care Surrogate Statute. Likewise, we do not reach Manhattan Nursing's argument that Mrs. Simmons is bound to the arbitration agreement as a third-party beneficiary. Lastly, we do not reach the issue of whether Byrd may compel arbitration as a nonsignatory to the arbitration agreement since we conclude that there was no valid arbitration agreement.

## CONCLUSION

¶22.     The petition for interlocutory appeal is granted and the merits of the appeal are considered pursuant to this consolidated appeal. After a de novo review of the trial court's decisions to deny the motions to compel, this Court finds that there was no valid arbitration

11

agreement. Therefore, the trial court's orders denying the motions to compel are affirmed, and these cases are remanded for further proceedings.

¶23. **AFFIRMED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**