### AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA
### Plaintiff

### v.

### Isrella MILSAP Defendant

### No. CIV.A.4:04 CV G107LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

Sept. 2, 2004.

---

Randy L. Dean, Walter D. Wilson, Wells, Marble & Hurst, Jackson, FL, for Plaintiff.

C. Edward Gibson, IV, Charles E. Gibson, III, Mary Jeanne Gibson, The Gibson Law Firm, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff American Bankers Insurance Company of Florida (American Bankers) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for stay of underlying proceedings. In her response to the motion, defendant Isrella Milsap contends that the motion, as framed, should be denied, but she requests alternatively that the court stay resolution of the motion in accordance with Rule 56(f).

Isrella Milsap, the defendant herein, is one of a number of persons who filed a lawsuit in the Chancery Court of Jones County against Norwest Financial Mississippi, Inc., Wells Fargo Financial of Mississippi, Inc., American Bankers and others relating to loans they had obtained or co-signed or guaranteed from the defendant lenders in connection with which they were charged for credit insurance products, some of which products were offered by American Bankers, the case being styled *Husband, et al. v. Norwest Financial Mississippi, Inc., et al.* The plaintiffs asserted a variety of claims against the defendants, most relating to the alleged failure to disclose pertinent terms of the loan transactions and related insurance transactions. The case was removed by the defendants therein, assigned Civil Action No. 2:03CV109SR, and is currently

pending in the Hattiesburg Division of this court, awaiting ruling on a motion to remand.

On June 3, 2004, after the *Husband* case had been commenced and removed, American Bankers filed its complaint in this cause to compel arbitration of Milsap's claims in the *Husband* action in view of her having executed an arbitration agreement in connection with the loan transaction which provides for binding arbitration of "any dispute, claim or controversy of any kind arising out of or relating to your Loan Agreement." It thereafter filed the present motion for summary judgment, seeking an adjudication that the arbitration agreement mandates that Milsap must arbitrate her claims in the *Husband* action.

■ The question whether parties should be compelled to arbitrate a dispute is governed by a two-step inquiry. " 'First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable.'" *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir.2004) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992)). Or in other words, "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims," *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). "The first step of the process entails determining 'whether there is a valid agreement to arbitrate between the parties; and ... whether the dispute in question falls within the scope of that arbitration agreement.'" *Hill*, 367 F.3d at 429 (quoting *Webb*, 89 F.3d at 258).

In response to American Bankers' motion, Milsap does not deny that she signed the subject arbitration agreement, or that

the agreement by its terms, if enforceable, would cover the claims she has asserted in the *Husband* case. She contends that the agreement is not valid and enforceable because it is unconscionable. Specifically, she argues that "[t]he arbitration agreement in question is part of a contract which the Defendant seeks to rescind and cancel and which the Defendant submits [is] unconscionable under the laws of Mississippi." From this, she reasons that American Bankers' request for summary judgment is obviously unsustainable since American Bankers "has not yet submitted any evidence to dispute [her] claims" that the loan contract, including the arbitration agreement, is unconscionable. Alternatively, she contends that if the court is not inclined to deny the motion on that basis, then before the court considers the motion for summary judgment, she should be given the opportunity to conduct discovery respecting her unconscionability defense. For the reasons that follow, the court finds no merit in defendant's positions.

■ In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, the Supreme Court held that under the FAA, the federal courts may only consider "issues relating to the making and performance of the agreement to arbitrate." 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Court held that the "making" of an agreement to arbitrate was not called into question by a general allegation that the entire contract was void because of fraudulent inducement, *see id.* And, since the defense asserted in *Prima Paint* did not attack the "making" of the agreement to arbitrate itself, the Court ordered arbitration, noting that the FAA reflects an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.* at 404, 388

U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. *See Hill,* 367 F.3d at 429 (discussing Court's reasoning in *Prima Paint* ).

 Addressing the scope and application of the *Prima Paint* rule, the Fifth Circuit has held that "where the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Hill,* 367 F.3d at 429 (citing *Will–Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211, 218 (5th Cir.2003) as example of such a case). In the far more common case of a party who does not challenge the existence of a contract, but rather attacks the enforceability of the agreement alleging that the contract is void ab initio or voidable, the severability doctrine contained in *Prima Paint* applies. *Id.* (citing *Will–Drill* ).

> Under this approach, "[o]nly if the arbitration clause is attacked *on an independent basis* can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Id.* (emphasis added); *accord Primerica Life,* 304 F.3d at 472 (holding that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute"). In other words, where the existence of the contract is not in question, the court must examine whether the allegations made by the party resisting arbitration challenge the "making of the agreement to arbitrate itself" as opposed to "allegations regarding the contract as a whole." *Dillard v. Merrill Lynch,* 961 F.2d 1148, 1154 n. 9 (5th Cir.1992) (citing *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270) (internal quotation marks omitted). Only if the allegations concern solely the arbitration term and are

> not generally applicable to the agreement as a whole may the district court properly adjudicate the enforceability of the arbitration clause. *See id.* (holding that by "focus[ing] specifically on the arbitration provision as an adhesive term," the party resisting arbitration had met the threshold requirement to challenge the making of the arbitration agreement). Where a defense does not specifically relate to the arbitration agreement, however, it must be submitted to the arbitrator as part of the underlying dispute. *See Primerica Life,* 304 F.3d at 472 (holding that a claim that one of the parties lacked the capacity to contract must be submitted to the arbitrator); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (noting that "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotation marks and citations omitted).

*Hill,* 367 F.3d at 430. It is clear from this explication of the *Prima Paint* separability doctrine that Milsap's challenge in this case on the basis of procedural unconscionability is not as to the existence of the contract containing the relevant arbitration agreement—she admits a contract exists—but rather to the enforceability of the agreement, including the arbitration agreement. In fact, in *Hill,* the court held that an assertion that the arbitration clause was "procedurally unconscionable," was "fundamentally different from" a party's assertion that no arbitration agreement exists, and fell within the *Prima Paint* separability doctrine. The court examined Hill's allegations and concluded that they did not attack the arbitration clause on an "independent basis," but rather constituted a "general attack" on the

contract.[1] Here, Milsap claims that "the contracts were presented on a 'take it or leave it basis' and that given [her] financial constraints and needs, [she][was] in a disparately inferior position to bargain for the terms," and that had she failed to agree to the arbitration terms, the loan would have been refused. She further argues that a conclusion of unconscionability would follow from the fact of "the disparity in the sophistication of the parties, [American Bankers] being a multi-million dollar corporation on the one hand, and the Defendant being poor, uneducated and relatively an unsophisticated individual in matters of finance on the other," coupled with the fact that the contract used "legalistic terms." Manifestly, these allegations concerning the arbitration agreement are "generally applicable to the agreement as a whole"

and thus resolution of Milsap's procedural unconscionability argument must be submitted to the arbitrator as part of the underlying dispute.[2]

From this it follows that Milsap's request that this action be stayed so that she may have an opportunity to conduct discovery relative to her unconscionability defense will be denied. Simply put, she has no need for discovery in this court relative to a matter that is to be addressed to the arbitrator.

American Bankers' motion includes a request to stay Milsap's claims in the underlying action pending arbitration. Although Milsap opposes this aspect of the motion, the motion to stay is well taken, and that is so regardless of whether the underlying case remains in federal court,[3] or is eventually remanded to state court.[4]

1. The court noted that in her affidavit, Hill claimed that she "never agreed nor intended to agree to arbitration" for two reasons, first because she "did not read the documents" that the salesman asked her to sign because the salesman, whom she trusted, did not ask her to read them or tell her that she needed to read them, and second, because "no one associated with East Ford ever told [her] that [she] was signing an arbitration agreement," or that she could object to the agreement, and no one explained the term "arbitration" to her. *Id.* The court held that "the general assertions that she did not read or understand the contractual documents or that East Ford did not explain the documents do not suffice to allege fraud in the making of the arbitration clause, but rather address the formation of the entire contract," *id.,* and held that "Hill's affidavit fails to undercut the arbitration clause." *Hill,* 367 F.3d at 430–431.

2. Citing *Pre–Paid Legal Services, Inc. v. Mealey,* 875 So.2d 1075 (Miss.2004), *Pre–Paid Legal Services, Inc. v. Battle,* 873 So.2d 79 (Miss.2004), and *Dyre Law Firm, PLLC. v. Bradley,* 874 So.2d 984, 987 (Miss.2004), Milsap advises in her response that the Mississippi Supreme Court has recently held that an arbitration agreement "for services" was unconscionable and therefore unenforceable. In fact, however, in none of those cases did the court hold that an agreement was uncon-

scionable because it was "for services," but rather held in each of the cited cases that the language of the contracts relied on by the party seeking to compel arbitration did not constitute a valid, binding arbitration agreement. In any event, this court fails to perceive how the cited cases, even if they stood for the proposition claimed by Milsap, would have any bearing on the case at bar.

3. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.").

4.

The All Writs Act, 28 U.S.C. § 1651, provides that The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

Based on the foregoing, it is ordered that plaintiff's motion for summary judgment on its complaint to compel arbitration, and its request to stay pending arbitration are granted.

agreeable to the usages and principles of law.